# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Phillip Ehlers and Charlene Ehlers, Plaintiffs | Case Number: |
| | Judge: |
| v. | |
| | Magistrate Judge: |
| United States of America and Shannon Kolodzik, PA, a/k/a Shannon Miller Defendants | |

## COMPLAINT

Plaintiffs, Phillip Ehlers and Charlene Ehlers, Plaintiffs, make this Complaint against the United States of America and Shannon Kolodzik, PA (physician's assistant) also known as Shannon Miller, Defendants. In support of this Complaint, the Plaintiffs state as follows:

### Jurisdiction

1. Counts I and II of this action arise under 28 USC 1346(b) and 28 USC 2671 & 2674, because they allege injury of the Plaintiff, Phillip Ehlers caused by the negligent acts of an employee of the United States Government (an employee of the Department of Veterans Affairs), while acting within the scope of her employment, under circumstances where the United States, if it were a private person, would be liable to the Plaintiffs under the law of Illinois, the place where the negligent acts occurred.

1

2. Counts III & IV of this action arise under 28 USC 1367, allowing this Court to exercise supplemental jurisdiction over state law claims such as set forth in those counts, which claims are so related to the claims alleged in Counts I and II, over which the Court has original jurisdiction, that the acts alleged in Counts III and IV form a part of the same case or controversy under Article III of the United States Constitution.

## Count I
### (Mr. Ehlers v. United States – Medical Negligence –FTCA)

3. Plaintiffs, Phillip and Charlene Ehlers are husband and wife and have been married for many years prior to the injury alleged in this Complaint. They are residents of Wauconda, Lake County, Illinois. Phillip Ehlers is a veteran of the United States Armed Forces, having served in the military from 1960-1962, and having been honorably discharged. During the events alleged in this Complaint to have occurred between November 28, 2012 and his hospitalization on August 27, 2013, he was a patient under the care and treatment of several health care professional employees of the Government at the Veterans Health Administration facility, McHenry Community Based Outpatient Clinic (McHenry Clinic), in McHenry, Illinois. Those health care professional employees included Shannon Kolodzik, PA a/k/a Shannon Miller.

4. The United States (the Government) is a Defendant in this case because the Plaintiff was negligently injured by the acts of an employee of the Government in the Department of Veteran Affairs, which operated the

McHenry Clinic, and its parent facility, the Captain James A. Lovell Health Care Center (the Lovell Center).

5. The Defendant, Shannon Kolodzik a/k/a Shannon Miller (hereinafter referred to as Kolodzik) is a physician's assistant (PA), who was employed in that capacity by the Government at the Department of Veterans Affairs Health facility, McHenry Clinic, in McHenry, Illinois, an affiliate of the Lovell Center. During the events alleged in this Complaint between December 14, 2012 and Mr. Ehlers' hospitalization on August 27, 2013, Physician's Assistant Kolodzik was the primary care provider (PCP) for Mr. Ehlers and held a physician-patient relationship with him.

6. For months prior to late November, 2012, Plaintiff, Phillip Ehlers was a Department of Veterans Affairs patient receiving health care at the Lovell Center. As part of that health care, he had been placed on a regimen of a daily low dose of a statin medication for the purpose of lowering the cholesterol level in his circulatory system.

7. However, in late November, 2012, Mr. Ehlers began to seek treatment at the McHenry Clinic. There, Shannon Kolodzik, PA became his primary care provider (PCP).

8. On December 14, 2012, without examining him, and without obtaining a then current laboratory report of the level of cholesterol in his bloodstream, PA Kolodzik ordered a prescription for Mr. Ehlers to begin to take double the amount of the statin medication he had been taking since October, 2012.

That increased dosage was the highest dosage marketed by the statin company.

9. Mr. Ehlers began taking that highest dose of statin medication immediately after it was prescribed by PA Kolodzik, and continued to take maximum dose statin medication as prescribed by her until his hospitalization on August 27, 2013.

10. A risk of taking a statin medication is that it may cause a patient to experience a serious adverse reaction called Rhabdomyolysis. Rhabdomyolysis is a breakdown of muscle tissue that, in turn, releases contents of the damaged muscle fiber into the bloodstream. Among those contents is a protein that travels to the kidneys as part of the excretory system, but when broken down in that process, it releases chemicals injurious to the kidney and its function. In addition, when kidney function is impaired, creatinine, a chemical that normally is removed from the blood by the kidneys, will increase in the bloodstream. Rhabdomyolysis also causes weakness and achiness in the injured muscles, which can become permanent.

11. The higher the dosage of statin medication a patient takes, the greater is the risk of developing Rhabdomyolysis.

12. There are various physical and medical conditions that also increase the risk of a patient taking a statin medication developing Rhabdomyolysis or other serious adverse reactions. If a patient's age is greater than 65 years, he is at increased risk of Rhabdomyolysis, even more so with a high dosage. If a

4

patient has diabetes and is taking a statin, he is at increased risk of developing Rhabdomyolysis. If a patient has renal (kidney) insufficiency, he is at greater risk of Rhabdomyolysis; and the same is true if he has a vitamin D deficiency.

13. On December 14, 2012, when PA Kolodzik doubled the prescription of the statin medication for Mr. Ehlers, his medical chart showed that he was 75 years old, and had diabetes as well as chronic renal insufficiency.

14. On February 6, 2013, Mr. Ehlers returned to McHenry Clinic and was cared for by PA Kolodzik. By that time, she had a laboratory report of Mr. Ehlers' cholesterol levels as of January 25, 2013. It revealed that the level of the harmful kind of cholesterol in his blood was well within the normal reference range. At that time, PA Kolodzik clearly knew that Mr. Ehlers was 75 years old and had diabetes, chronic renal insufficiency, and vitamin D deficiency.

15. On February 6, 2013, PA Kolodzik also knew that the creatinine level in Mr. Ehlers' blood had increased from an already abnormally high level to an even higher level as of January 25, 2013. Creatinine is a chemical that is processed by the kidneys for excretion. If the kidney is not functioning adequately, the creatinine will build up in the bloodstream. Generally, as the kidney function worsens, the level of creatinine in the blood increases.

16. Despite her knowledge of Mr. Ehlers' advanced age, diabetes, renal insufficiency, and vitamin D deficiency, indicating an increased risk of

Rhabdomyolysis, plus an increased creatinine level in his blood indicating the possibility that the statin was causing more kidney injury; and despite the fact that she knew Mr. Ehlers' bad cholesterol was within normal limits – PA Kolodzik continued Mr. Ehlers on the highest dose of the statin medication. He then continued to take that medication as prescribed.

17. On May 22, 2013, Mr. Ehlers returned to McHenry Clinic and was cared for by PA Kolodzik again. She switched him to another statin at that time, but she again put him on the maximum dose, and all the same risks for the patient remained under treatment by the new statin. PA Kolodzik also had neglected to obtain a cholesterol level blood test since the January 25, 2013 test report. And that report, as noted above, showed that the patient's bad cholesterol was in the normal range.

18. During the summer of 2013, Mr. Ehlers began experiencing soreness, weakness, and a strange sensation in his legs and arms. No one had informed him that those symptoms might be caused by the statin medication he was taking, and he had no knowledge or suspicion that they were.

19. Mr. Ehlers was still taking the remainder of the last prescription for the earlier statin on August 27, 2013 when his wife took him to the emergency department of the Lovell Center, because his legs had become so weak and painful that he could no longer use them, and he had fallen a couple of times in the last few days.

20. At the emergency department, it was determined by the emergency care doctor that Mr. Ehlers had Rhabdomyolysis, which he determined to be most likely from the statin he was taking. The doctor also determined that he had kidney failure from the Rhabdomyolysis.

21. Mr. Ehlers was admitted to the hospital for treatment of the Rhabdomyolysis and other serious medical problems caused by it, including the kidney failure, for which he had to have dialysis, and a pulmonary embolism. He remained a hospital inpatient for almost three weeks, much of it in intensive care. When he was discharged from the hospital, he was confined to a wheel chair, needed an oxygen tank to help him breathe, had continence problems, and remained bedridden for months, receiving home health care. He has never fully recovered from the weakness in his legs, and remains significantly disabled permanently.

22. In her care and treatment of Mr. Ehlers, PA Kolodzik was under a duty to possess and use the knowledge, skill and care ordinarily used by a reasonably careful, reasonably well-qualified physician assistant under similar circumstances in the same or similar locality.

23. In her care and treatment of Mr. Ehlers, PA Kolodzik breached that duty by negligently failing to follow the standard of care required of her, in one or more of the following acts or omissions:

7

a. In December, 2012, she increased the dosage of statin medication for Mr. Ehlers to the maximum level without first obtaining the results of a sufficiently recent blood test of his blood cholesterol level;

b. In December, 2012, she increased the dosage of statin medication for Mr. Ehlers to the maximum level when she knew or should have known that he had multiple physical and medical conditions that put him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication;

c. In February, 2013, she continued Mr. Ehlers on the maximum dosage of statin medication when she knew or should have known that he had multiple physical and medical conditions that put him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication, knew that his bad cholesterol level was within normal limits, and knew that his blood creatinine level was abnormally high and had recently increased;

d. In May, 2013, she again continued Mr. Ehlers on the maximum dosage of a statin medication without first obtaining the results of a sufficiently recent blood test of his blood cholesterol level;

e. In May, 2013, she again continued Mr. Ehlers on the maximum dosage of a statin medication when she knew or should have known that he had multiple physical and medical conditions put him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication, that his

last known cholesterol level was within normal limits, and that his blood creatinine level was still abnormally high;

    f.    She did not do a medication reconciliation after prescribing a second statin for an elderly patient, so as to know what medication the patient would be taking;

    g.    She did not obtain a physician consult or pharmacy input for the complex medication situation presented by Mr. Ehlers' circumstances; or

    h.    She was otherwise negligent in her care and treatment of Mr. Ehlers.

24.    The negligent conduct of PA Kolodzik was a proximate cause of serious injury to Mr. Ehlers in that it caused him to develop Rhabdomyolysis, kidney failure, pulmonary embolism, and other serious medical conditions. Further, it has caused him to experience great pain and suffering, serious and permanent disability, loss of his normal life, and extensive past and future medical care, treatment and expense.

25.    All of the acts of PA Kolodzik, as alleged in this Complaint, were performed by her within the scope of her employment by the United States.

26.    In an effort to settle Plaintiff's claim against the United States for the medical negligence injuries he has suffered, on November 18, 2014, pursuant to the Federal Tort Claims Act, Mr. Ehlers submitted to the Regional Counsel for Veterans Affairs, claim form SF 95, describing the facts of this case and requesting $200,000 compensation for Mr. Ehlers for those injuries.

27. Regional Counsel denied Mr. Ehlers' claim in a letter dated May 18, 2015, a copy of which is attached hereto as exhibit A. That denial resulted in this Complaint being filed in US District Court.

WHEREFORE, Plaintiff, Phillip Ehlers, prays that this Court enter judgment on this Count I in his favor and against the Untied States of America under the Federal Tort Claims Act, 28 USC 2671, et seq., and award to Plaintiff compensatory damages in an amount of $200,000 together with costs of the case.

## Count II
### (Mrs. Ehlers v. United States – Loss of Consortium – FTCA)

3-25   As paragraphs 3-25 (there are no paragraphs 1 or 2) of this Count, Plaintiff, Charlene Ehlers, incorporates by reference as though fully set forth herein, paragraphs 3-25 of Count I of this Complaint.

26. As a proximate result of the negligently caused injuries suffered by her husband, as alleged above, Charlene Ehlers has experienced a severe loss of consortium, including loss of services which he had performed for her benefit, loss of activities they engaged in together, loss of society, felicity and companionship; and reduced intimate relationships between her and her husband.

27. In an effort to settle Mrs. Ehlers' claim against the United States for the loss of consortium she suffered because of her husband's injuries, on November 18, 2014, pursuant to the Federal Tort Claims Act, she submitted to the Regional Counsel for Veterans Affairs, a claim form SF 95 describing

the facts of this case and requesting $80,000 compensation for her loss of consortium.

28. Regional Counsel denied Mr. Ehlers' claim in a letter dated May 18, 2015, which stated it was denying what it described as the Phillip Ehlers "matter." A copy of that letter is attached hereto as exhibit A. That letter is the only response Plaintiffs received from Regional counsel. In the event that the Regional Counsel's letter is found not to encompass Mrs. Ehlers' claim, the failure of Regional Counsel to otherwise respond to Mrs. Ehlers' SF 95 claim within six months is deemed to constitute a denial of the claim. Regional Counsel's denial has resulted in this Complaint being filed in US District Court.

WHEREFORE, Plaintiff, Charlene Ehlers, prays that this Court enter judgment on this Count II in her favor and against the United States of America under the Federal Tort Claims Act, 28 USC 2671, et seq., and award to Plaintiff compensatory damages in an amount of $80,000 together with costs of the case.

**Count III**
**(Mr. Ehlers v. Shannon Kolodzik, PA – Medical Negligence)**
**(Alternative State Cause of Action if Shannon Kolodzik, PA is Found Not to Be a Government Employee)**

1. Plaintiff, Phillip Ehlers, is a resident of Wauconda, Lake County, Illinois. From December 14, 2012 through August 27, 2013, he was a patient under care and treatment by the Defendant Shannon Kolodzik, PA, a physician assistant, also known as Shannon Miller, PA. (Hereinafter, she is

referred to as Shannon Kolodzik, PA). During that time Mr. Ehlers and PA Kolodzik were in a health care provider-patient relationship.

2. Throughout that health care provider-patient relationship, Shannon Kolodzik, PA, was the primary health care provider for Mr. Ehlers. She cared for him at the McHenry Community Based Outpatient Clinic (McHenry Clinic), in McHenry, Illinois.

3. For months prior to late November, 2012, Plaintiff, Phillip Ehlers, was being treated by other healthcare providers with a daily low dose of a statin medication for the purpose of lowering the cholesterol level in his circulatory system.

4. However, in late November, 2012, Mr. Ehlers began to seek treatment at the McHenry Clinic. There, Shannon Kolodzik, PA became his primary care provider. (PCP)

5. On December 14, 2012, without examining him, and without obtaining a then current laboratory report of the level of cholesterol in his bloodstream, PA Kolodzik ordered a prescription for Mr. Ehlers to begin to take double the amount of the statin medication he had been taking since October, 2012. That increased dosage was the highest dosage marketed by the statin company.

6. Mr. Ehlers began taking that maximum dose of statin medication immediately after it was prescribed by PA Kolodzik, and continued to take

maximum dose statin medication as prescribed until his hospitalization on August 27, 2013.

7. A risk of taking a statin medication is that a patient may experience a serious adverse reaction called Rhabdomyolysis. Rhabdomyolysis is a breakdown of muscle tissue that, in turn, releases contents of the damaged muscle fiber into the bloodstream. Among those contents is a protein that travels to the kidneys as part of the excretory system, but when broken down in that process, it releases chemicals injurious to the kidney and its function. In addition, when kidney function is impaired, creatinine, a chemical that normally is removed from the blood by the kidneys, will increase in the bloodstream. Rhabdomyolysis also causes weakness and achiness in the injured muscles, which can become permanent.

8. The higher the dosage of statin medication a patient takes, the greater is the risk of developing Rhabdomyolysis.

9. There are various physical and medical conditions that also increase the risk of a patient taking a statin medication developing Rhabdomyolysis or other serious adverse reactions. If the patient's age is greater than 65 years, he is at increased risk of Rhabdomyolysis, even more so with a high dosage. If a patient has diabetes, he is at increased risk of Developing Rhabdomyolysis. If the patient has renal (kidney) insufficiency, he is at greater risk of Rhabdomyolysis; and the same is true if he has a vitamin D deficiency.

10. On December 14, 2012, when PA Kolodzik doubled the prescription of the statin medication for Mr. Ehlers, his medical chart showed that he was 75 years old, and had diabetes as well as chronic renal insufficiency.

11. On February 6, 2013, Mr. Ehlers returned to McHenry Clinic and was cared for by PA Kolodzik. By that time, she had a laboratory report of Mr. Ehlers' cholesterol levels as of January 25, 2013. It revealed that the level of the harmful kind of cholesterol in his blood was well within the normal reference range. At that time, PA Kolodzik clearly knew that Mr. Ehlers was 75 years old and had diabetes, chronic renal insufficiency, and vitamin D deficiency.

12. On February 6, 2013, PA Kolodzik also knew that the creatinine level in Mr. Ehlers' blood had increased from an already abnormally high level to an even higher level as of January 25, 2013. Creatinine is a chemical that is processed by the kidneys for excretion. If the kidney is not functioning adequately, the creatinine will build up in the bloodstream. Generally, as the kidney function worsens, the level of creatinine in the blood increases.

13. Despite her knowledge of Mr. Ehlers' advanced age, diabetes, renal insufficiency, and vitamin D deficiency, indicating an increased risk of Rhabdomyolysis, plus an increased creatinine level in his blood indicating the possibility that the statin was causing more kidney injury; and despite the fact that she knew Mr. Ehlers' bad cholesterol was within normal limits – PA

Kolodzik continued Mr. Ehlers on the maximum dose of the statin medication. He then continued to take that medication as prescribed.

14. On May 22, 2013, Mr. Ehlers returned to McHenry Clinic and was cared for by PA Kolodzik again. She switched him to another statin at that time, but she again put him on the maximum dose, and all the same risks for the patient remained under treatment by the new statin. PA Kolodzik also had neglected to obtain a cholesterol level blood test since the January 25, 2013 test report. And that report, as noted above, showed that the patient's bad cholesterol was in the normal range.

15. During the summer of 2013, Mr. Ehlers began experiencing soreness, weakness, and a strange sensation in his legs and arms. No one had informed him that those symptoms might be caused by the statin medication he was taking, and he had no knowledge or suspicion that they were.

16. Mr. Ehlers was still taking the remainder of the last prescription for the earlier statin on August 27, 2013 when his wife took him to the emergency department of the Lovell Center because his legs had become so weak and painful that he could no longer use them, and he had fallen a couple of times in the last few days.

17. At the emergency department, it was determined by the emergency care doctor that Mr. Ehlers had Rhabdomyolysis, which he determined to be most likely from the statin he was taking. The doctor also determined that he had kidney failure from the Rhabdomyolysis.

18. Mr. Ehlers was admitted to the hospital for treatment of the Rhabdomyolysis and other serious medical problems caused by it, including the kidney failure, for which he had to have dialysis, and a pulmonary embolism. He remained a hospital inpatient for almost three weeks, much of it in intensive care. When he was discharged from the hospital, he was confined to a wheel chair, needed an oxygen tank to help him breathe, had continence problems, and remained bedridden for months, receiving home health care. He has never fully recovered from the weakness in his legs, and remains significantly disabled permanently.

19. In her care and treatment of Mr. Ehlers, PA Kolodzik was under a duty to possess and use the knowledge, skill and care ordinarily used by a reasonably careful, reasonably well-qualified physician assistant under similar circumstances in the same or similar locality.

20. In her care and treatment of Mr. Ehlers, PA Kolodzik breached that duty by negligently failing to follow the standard of care required of her, in one or more of the following acts or omissions:

    a. In December, 2012, she increased the dosage of statin medication for Mr. Ehlers to the maximum level without first obtaining the results of a sufficiently recent blood test of his blood cholesterol level;

    b. In December, 2012, she increased the dosage of statin medication for Mr. Ehlers to the maximum level when she knew or should have known that he had multiple physical and medical conditions that put

him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication;

    c.    In February, 2013, she continued Mr. Ehlers on the maximum dosage of statin medication when she knew or should have known that he had multiple physical and medical conditions that put him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication, knew that his bad cholesterol level was within normal limits, and knew that his blood creatinine level was abnormally high and had recently increased;

    d.    In May, 2013, she again continued Mr. Ehlers on the maximum dosage of a statin medication without first obtaining the results of a sufficiently recent blood test of his blood cholesterol level;

    e.    In May, 2013, she again continued Mr. Ehlers on the maximum dosage of a statin medication when she knew or should have known that he had multiple physical and medical conditions that put him at increased risk of Rhabdomyolysis or other serious adverse reactions to the medication, that his last known cholesterol level was within normal limits, and that his blood creatinine level was still abnormally high;

    f.    She did not do a medication reconciliation after prescribing a second statin for an elderly patient, so as to know what medication the patient was taking;

    g.    She did not obtain a physician consult or pharmacy input for the complex medication situation presented with Mr. Ehlers' situation; or

17

   h. She was otherwise negligent in her care and treatment of Mr. Ehlers.

21. The negligent conduct of PA Kolodzik was a proximate cause of serious injury to Mr. Ehlers in that it caused him to develop Rhabdomyolysis, kidney failure, pulmonary embolism, and other serious medical conditions. Further, it has caused him to experience great pain and suffering, serious and permanent disability, loss of his normal life, and extensive past and future medical care, treatment and expense.

22. In accordance with 735 ILCS 5/2-622, an affidavit of Plaintiffs' Attorney is attached hereto, together with a written report of a knowledgeable and qualified medical consultant establishing the reasonableness and merit of this cause of action.

  WHEREFORE, Plaintiff, Phillip Ehlers, prays that this Court enter judgment on this Count III in his favor and against the Defendant, Shannon Kolodzik, PA, a/k/a Shannon Miller, and award to Plaintiff compensatory damages in an amount in excess of $50,000 together with costs of the case.

### Count IV
### (Mrs. Ehlers v. Shannon Kolodzik, PA – Loss of Consortium)
### (Alternative State Cause of Action if Shannon Kolodzik, PA is Found Not to Be a Government Employee)

1-22. As paragraphs 1-22 of this Count, Plaintiff, Charlene Ehlers, incorporates by reference as though fully set forth herein, paragraphs 1-22 of Count III of this Complaint.

18

23. As a proximate result of the negligently caused injuries suffered by her husband, as alleged above, Charlene Ehlers has experienced a severe loss of consortium, including loss of services which he had performed for her benefit, loss of activities they engaged in together, loss of society, felicity and companionship; and reduced intimate relationships between her and her husband.

WHEREFORE, Plaintiff, Charlene Ehlers, prays that this Court enter judgment on this Count IV in her favor and against the Defendant, Shannon Kolodzik, PA, a/k/a Shannon Miller, and award to Plaintiff compensatory damages in an amount in excess of $50,000 together with costs of the case.

Respectfully Submitted,

*Thomas L. Knight*

Thomas L. Knight
One of the Attorneys for Plaintiffs

Thomas L. Knight and Associates
795 W. Hawthorne Blvd.
Wheaton, IL 60187

Ph: (630) 480-7280
Fax: (630) 690-9039
Email: tlklaw@outlook.com